TYSON, Judge.
Martin Huffman was charged by indictment with second degree arson by setting fire to a building, the property of one Parker Gray Mount, contrary to § 13A-7-42, Code of Alabama 1975 as amended.
The jury found the appellant “guilty as charged” and following a sentencing hearing, the trial court set sentence at seven years’ imprisonment, but suspended the sentence and placed the appellant on probation conditioned upon his paying $1,000 as restitution on February 17, 1984 and then $150 per month until the complete restitution was paid or a total of $11,776.
*1369 Because reversible error occurred during the examination of the assistant fire marshal, only a brief statement of the facts is herein set forth.
Hattie Mae Bennett testified that on September 4, 1982 she rented a residence at Route 1, Box 15, Sprague, Alabama from Mr. Parker Gray Mount. She had gone over to visit her brother that evening and she heard later that the house was on fire. She returned home. Several members of the family and neighbors attempted to remove possessions from the home but they were severely damaged by fire. She testified that the house had electricity but that there was a definite smell of gasoline and that she had no lawn mower nor an automobile at the house at the time. She stated that she used an electric stove which was new and in good condition. She stated that all of her appliances were in good condition.
Two of the State’s witnesses indicated that they observed the appellant leaving the scene in haste, driving a green Ford automobile.
I
Because the appellant has properly preserved the issue for review by this court, this opinion deals with the question presented.
John Robinson, Assistant Fire Marshal for the State of Alabama, after giving his qualifications, stated that he made an investigation of the fire in question at Sprague, Alabama. He testified that, in making his examinations, he always looks to see if the cause is through natural causes, or if there has been some type of explosion caused by use of some incendiary substance. He stated that he had gone on to the scene of the fire on the date in question but returned several times and completed his examination some ten days following the fire. His testimony is as follows:
“Q. In this particular case, how did you rule out accidental causes?
“A. Okay. First of all, there was no adverse weather in the area of this dwelling that night. That would have eliminated the lightning thing. There was no adverse weather around. The area of accidental-type causes, I examined the stove to determine if the stove had been left on and if pots, pans, whatever, had been "left on it, and one of them had overheated. I checked the electrical wiring, the two fireplaces and chimneys that were used to heat the house were not even in the area of origin. They are located in the two rooms at the bottom of the picture marked KBR and HBR.
“Q. Fireplaces were here? (Indicating).
“A. Yes.
“Q. Okay.
“A. Yes, ma’am.
“Q. Okay. You mentioned a stove. Where was the stove located? Which wall?
“A. In the kitchen. It’s not in the wall. The stove would be against the wall that separates K from HBR.
“Q. Okay. So this is the stove? (Indicating).
“A. Yes, ma’am. That’s correct.
“Q. Do you have a location as to where the other appliances were?
“A. Yes, ma’am.” (R. 90-91).

“Q. Okay. You said that you checked the wiring on all of the appliances?
“A. Checked generally the wiring all around the area of origin.
“Q. What kind of wiring is that?
“A. Copper.
“Q. What kind of plugs were here for the appliances? (Indicating.)
“A. Okay. On the refrigerator and the freezer and everything, these would have just been standard outlets that you find virtually anywhere such as this one right over here behind me. However, the one for the stove would have to be an outlet that is made for an electrical stove. It is much larger than a standard outlet. You cannot plug an appliance cord from an electrical stove into this type of outlet. The blades on the plug are much too *1370 large. It won’t go in. The configuration is all wrong also.
“Q. Did you find any indication whatsoever, since there was an appliance on that wall, that could have caused the fire, or any malfunctioning in the wiring?
“A. I found nothing at the scene to suggest that this was an accidental fire. No, ma’am. Not in the way of appliances, wiring, nothing.
“Q. Okay. Now, I am going to ask you if you have an opinion as to the cause of the fire. When I say cause of the fire, I mean exactly what materials were used, if any, to start the fire.
“A. Based on the elimination of acts of God and accidental causes, I would have to feel that this fire was intentionally caused.
“MR. YATES: Your Honor, I object.
“THE COURT: Overruled.
“MR. YATES: Your Honor, that asks— that’s an ultimate fact of issue here. That is not expert testimony.
“THE COURT: Overruled.
“THE WITNESS: That it was intentionally caused and that there — based on the information received from witnesses, that there was a possibility that gasoline was used.
“Q. (By Ms. Emfinger) So, it is your determination that it was a deliberate or intentional fire?
“MR. YATES: Object to that. It asks for an ultimate fact in issue, and it is not subject to an expert witness’s testimony.
“THE COURT: It’s his opinion. Ask him that again.
“Q. (By Ms. Emfinger) What is your opinion as to the cause of the fire? Was it accidental, or was it deliberate and intentional?
“A. Well—
“MR. YATES: I object for the Record.
“THE COURT: I also overruled you. Go ahead.
“A. That it was intentionally set.
“THE COURT: Any further questions?
“MS. EMFINGER: No.
“MR. YATES: I have some questions.
CROSS EXAMINATION
BY MR. YATES:
“Q. Mr. Robinson, where was the outlet for this stove? (Indicating).
“A. Where is the outlet for the stove?
“Q. Yes.
“A. At the time I found it, it was laying on the ground, sir, or what was left was laying on the ground.
“Q. When did you make your examination? You said that you went back and examined the debris.
“A. Yes, sir.
“Q. When was that?
“A. On September the 14th.
“Q. That was — the fire occurred on September 4th?
“A. Yes. •
“Q. Ten days later, you went back and made your investigation?
“A. Yes, sir.
“Q. Did anyone protect the scene from vandals or anyone else that might have gone in there and moved anything?
“A. The family had been told, and the owners had been told that we did not want anything moved until such time as we had released it, and we had not released it at that time.” (R. 92-95).
In Hughes v. State, 412 So.2d 296, (Ala.Crim.App.1982) Judge DeCarlo, speaking for the court observed:
“It is clear that, over proper objection, the admission of testimony that a fire was ‘intentional’ or ‘of incendiary origin’ is reversible error. See Colvin v. State, 247 Ala. 55, 22 So.2d 548 (1945); Moreland v. State, Ala.Cr.App. 373 So.2d 1259 (1979). Even an expert may not give an opinion on the issue since the cause of a fire is the ultimate fact in an arson case. Moreland v. State, supra.”
It is clear from the record as quoted above and the authorities herein noted that Mr. Robinson was improperly permitted to give his opinion as to the ultimate fact at issue in this arson ease. Thus reversible error occurred. This was properly pre *1371 served by counsel’s objections to his testimony as noted.
For the error shown, this cause must be reversed for a new trial.
REVERSED AND REMANDED.
All the Judges concur.